# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KEVIN WARD, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | **No. 12-2642-KHV** |
| ) | |
| **LENEXA, KANSAS POLICE DEPARTMENT,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Under 42 U.S.C. § 1983, Kevin Ward and Desta Yilala bring suit pro se against the Police Department of Lenexa, Kansas and Lenexa Police Officers Marcus Hefley, Nicholas Vajen and James Befort. Plaintiffs allege that defendants violated their rights under the Fourteenth Amendment of the United States Constitution. This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #67) filed November 8, 2013. For reasons set forth below, the Court finds that the motion should be sustained.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the

governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets the initial burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which the nonmoving party carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on the pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010); see Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Long v.

Morris, 485 F. Supp. 2d 1247, 1250 (D. Kan. 2007). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment as to the claims of either plaintiff. See Jackson v. Yellow Logistics, Inc., 24 F. Supp. 2d 1206, 1209 (D. Kan. 1998).

## Facts

The following facts are uncontroverted or, where controverted, construed in a light most favorable to plaintiffs.[1]

---

[1] Plaintiffs filed separate responses in opposition to defendants' motion for summary judgment. See Kevin Ward's Memorandum Opposing Motion For Summary Judgment (Doc. #72) filed November 27, 2013; [Plaintiff Yilala's] Response To Defendant's Motion For Summary Judjement [sic] (Doc. #78) filed December 20, 2013. In reply, defendants assert that plaintiffs have failed to provide facts supported by citation to the record as required by D. Kan. Rule 56.1. See Defendants' Reply Memorandum In Support Of Their Motion For Summary Judgment (Doc. #76) filed December 11, 2013 at 6, 8; Defendants' Reply Memorandum In Support Of Motion For Summary Judgment Of Plaintiff Desta Yilala's Action (Doc. #79) filed December 30, 2013 at 2-3. After reviewing the briefs, however, the Court noted that defendants had not filed the documents required by D. Kan. Rule 56.1(f).1, which provides in part as follows:

> Any represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached. Where the pro se party is not the plaintiff, the movant must amend the form notice as necessary to reflect that fact.

D. Kan. Rule 56.1(f) (Oct. 2013 Supplement). The Court therefore ordered that on or before March 17, 2014, defendants serve and file the papers required by D. Kan. Rule 56.1(f). The Court further ordered that on or before April 7, 2014, plaintiffs could file new responses to the motion for summary judgment. On April 14, 2014, plaintiff Kevin Ward filed a Response To Defendants' Notice And Court Order In Reference To D. Kan. Rule 56.1(f) (Doc. #88). Defendants have filed a motion to strike Ward's response as untimely. See Defendants' Motion To Strike (Doc. #89) filed April 15, 2014.

In his new response, Ward asserts that discrepancies in copies of the April 17, 2011 police report demonstrate bad faith on the part of defendants. The Court has reviewed the record and finds that the discrepancies are not material. Further, the Court has searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment as to the claims of
(continued...)

Desta Yilala is an African American. He operated a restaurant and bar at 7820 Quivira Road, Lenexa, beginning in September of 2003 until December 2011.[2] Yilala changed the name of the restaurant several times; the Court refers to it as the business. At all times relevant to this lawsuit, the business was open to the public. Yilala was required to have a liquor license in order to serve and/or sell alcohol at the business.

Kevin Ward is an African American. He was part owner and operator of Ward Guard, a security company. From April 17, 2011 to September of 2011, Ward Guard provided security services to Yilala's business.

Defendants Marcus Hefley, Nicholas Vajen and James Befort were sworn law enforcement officers of the Lenexa Police Department at all times relevant to this lawsuit.

The Lenexa Police Department has received a significantly higher volume of calls regarding complaints about the business than they have received for any other business entity in Lenexa. Between 2006 through 2011, Lenexa police officers were present at the business at least 70 times. Officers responded to calls regarding noise disturbances, concealed weapons on clientele, thefts and assaults and batteries. Officers also went to the business to investigate compliance with liquor laws.

On November l, 2009, Lenexa police officers conducted a tavern check at the business following a narcotics investigation in the parking lot.[3] The officers cited two patrons for being minors in possession of alcohol.

---

[1](...continued)
either plaintiff. See Jackson v. Yellow Logistics, Inc., 24 F.Supp. 2d 1206, 1209 (D. Kan. 1998).

[2] At all relevant times, Yilala was the sole shareholder/owner of the business.

[3] Officers perform tavern checks in part because of ongoing problems with drugs, underage drinking and excessive noise.

-4-

On December 5, 2009, Lenexa police officers conducted a tavern check of the business and found a scale with white residue which tested positive for cocaine in a preliminary field test. The officers then closed the business before its scheduled closing time. The Lenexa police chief told Yilala that someone from the police department would contact him when it received the results of further testing, but no one ever contacted Yilala to discuss the test results.

More than two years later, on January 30, 2011, Lenexa police officers were dispatched to the business to investigate a noise complaint and conduct a tavern check. The officers entered the business and arrested two people for possession of cocaine and two minors who were consuming alcohol. The officers closed the business before the scheduled closing time because of the criminal activity.[4]

On the evening of April 17, 2011, Ward and his employee were providing security services for the business. Officers Befort and Hefley came to the business to investigate a noise complaint. Officer Hefley asked who was in charge and Ward stated that he was in charge. Officer Hefley believed that Ward was in charge of the business. Ward knew that Yilala was inside the business but did not tell Officer Hefley.

Officer Hefley told Ward that the Lenexa Police Department had received a noise complaint regarding the music coming from the business. Officer Hefley then went to speak with the reporting party, and could hear the music coming from the business from over 50 feet away. Officer Hefley did not use a decibel meter to measure the volume of noise coming from the business. The reporting party was willing to sign a formal complaint against the business. Officer Hefley told Ward that

---

[4] Later, Yilala called the Lenexa Police Department to obtain the names of the individuals arrested for cocaine possession because he was considering filing a lawsuit against them for loss to his business. The department never provided him with names of the criminal suspects.

-5-

nearby residents "shouldn't have to hear the boom-boom music coming from this club at night." Ward Dep. at 76. Officer Hefley issued Ward a notice to appear in Lenexa Municipal Court for disturbing the peace.[5] Officer Befort ordered the business to shut down before the scheduled closing time.

On April 24, 2011, the Lenexa Police Department received a noise complaint regarding Yilala's business. Officer Vajen went to the business to investigate the complaint. He used a decibel reader and determined that the noise was not excessive.

On April 26, 2011, Officer Vajen determined that the business liquor license had expired on April 14, 2011 and that the five-day grace period had expired on April 19, 2011. Vajen mailed a citation to Yilala for failing to obtain a proper license. The City of Lenexa Municipal Court later dismissed the citation.

On October 21, 2011, Lenexa police officers came to the business at around 7:00 p.m. to perform a tavern check. The officers walked into the business and used flashlights to look in the bathroom, kitchen, storage room, walk-in cooler and office. The officers asked Yilala for his liquor license.

## **Analysis**

Plaintiffs assert that defendants violated their Fourteenth Amendment rights to equal protection and due process. Specifically, Yilala asserts that Officers Hefley, Vajen and Befort violated his right to equal protection when they searched his business several times without a warrant and closed the business early several times, and that these actions ultimately forced him to close the

---

[5] Hefley thought he had to serve an individual so he issued the notice to Ward rather than the business.

business.[6] Pretrial Order (Doc. #62) at 1-2. Ward asserts that defendants violated his right to equal protection by charging him with a crime for which officers knew he could not be held accountable. Id. at 10-11. Ward asserts that due to being charged with a crime, he nearly lost his commission as a private security officer with the Police Department in Kansas City, Missouri.

Defendant Lenexa Police Department asserts that it is entitled to summary judgment because it is not an entity which can sue or be sued. Officers Hefley, Vajen and Befort assert that they are entitled to summary judgment because even viewed in a light most favorable to plaintiffs, the record does not create an issue of material fact whether defendants violated plaintiffs' rights to equal protection. In the alternative, the officers contend that they are entitled to qualified immunity.

## I.   **Plaintiffs' Claims Against The Lenexa Police Department**

Defendants contend that the Lenexa Police Department is not a legal entity which is subject to suit. The Court agrees. Generally, governmental sub-units are not separate entities that may be sued under Section 1983. See Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985) ("City of

---

[6] On October 7, 2013, the Court entered a pretrial order (Doc. #62), which describes the nature of the case as follows:

> Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging violation of their equal protection rights under the Fourteenth Amendment of the United States Constitution. Plaintiffs' complaint is premised upon events that occurred at the business located at 7820 Quivira Road in Lenexa, Kansas, between 2009 and December 2011, when plaintiffs were working at that location. Specifically, plaintiffs contend the business was searched several times without a warrant and that the business was closed by officers before the end of business hours, which ultimately resulted in them being forced to close the business.

Pretrial Order (Doc. #62) at 1-2. During the discussion of the pretrial order, Ward complained that the order describes only Yilala's claims. Id. at 2. The Court therefore ordered that Ward's statement be attached to the pretrial order as an exhibit. In ruling on the motion for summary judgment, the Court addresses Ward's claims as set out in the complaint and in the exhibit to the pretrial order.
.

-7-

Denver Police Department" not "separate suable entity"). Under Kansas law, absent a specific statute, subordinate governmental agencies do not have the capacity to sue or be sued. Mason v. Twenty-Sixth Judicial Dist., 670 F.Supp. 1528, 1555 (D. Kan. 1987); Hopkins v. State, 237 Kan. 601, 702 P.2d 311, 316 (1985). Plaintiff have pointed to no Kansas statute that would allow an action against the Lenexa Police Department. This Court has routinely dismissed actions against city police departments because they are not entities capable of being sued. See Camick v. Wattley, No. 13-2361-JAR, 2013 WL 6384820, at *7 (D. Kan. Dec. 5, 2013); Creamer v. Rooks Cnty., Kan., No. 13-4076-RDR, 2013 WL 5406429, at *3 (D. Kan. Sept. 25, 2013). The Court therefore finds that the Lenexa Police Department is entitled to summary judgment.

## II.     Plaintiffs' Claims Against The Individual Defendants In Their Official Capacities

An official capacity claim is simply another way of pleading an action against the entity of which an individual defendant is an agent. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Asserting official-capacity claims against city employees such as Officers Hefley, Vajen and Befort is simply another way of suing the municipality, in this case the City of Lenexa. See Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010) (county employees); Nasious v. Littleton Police Dep't, 366 F. App'x 897, 898 (10th Cir. 2010) (city employees).

A municipality may be liable under 42 U.S.C. § 1983 only when it has deprived a person of his constitutional rights or has caused a person to be subjected to such deprivation. Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). A municipality is not liable merely for the actions of its employees under a theory of respondeat superior. See id. Rather, municipalities are liable where enforcement of policies or customs by their employees causes a deprivation of a person's federally protected rights. See Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).

A plaintiff may show such a policy or custom through (1) formal regulations; (2) widespread practice so permanent that it constitutes a custom; (3) decisions made by employees with final policymaking authority that are relied upon by subordinates; or (4) a failure to train or supervise employees that results from a deliberate indifference to the injuries caused. Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1188-89 (10th Cir. 2010).

Plaintiffs have not identified a policy or custom that caused their alleged injuries. Plaintiffs have not alleged or shown that any defendant acted based on official municipal policy or custom. Plaintiffs have not shown that their alleged injuries resulted from any policy or custom. They have not identified any widespread and persistent practice. Further, they have not identified any individual as a policymaking official or any policy or custom that was the moving force behind the alleged constitutional deprivations. Plaintiffs' claims against defendants in their official capacities, which are actually claims against the City of Lenexa, therefore fail.

### III. Claims Against Officers Hefley, Vajen And Befort In Their Individual Capacities

Plaintiffs also bring claims under Section 1983 against Officers Hefley, Vajen and Befort in their individual capacities. Individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991). A government official may be personally liable under Section 1983 if plaintiff shows that the official, acting under color of state law, caused the deprivation of the plaintiff's federal rights. Defendants assert that plaintiffs have failed to set forth evidence to establish any constitutional violation.[7]

---

[7] In the alternative, defendants assert that they are entitled to qualified immunity because plaintiffs cannot show that the law was clearly established at the time of the alleged violations. The parties do not address this issue in any depth. Because the Court finds that plaintiffs
(continued...)

### A. Yilala's Claim

Yilala alleges that defendants denied him equal protection. Specifically, he asserts that based on race, the officers treated his business differently than any other business by repeatedly making tavern checks, investigating noise complaints and shutting the business down before the normal closing time.

The Equal Protection Clause of the Fourteenth Amendment precludes selective enforcement of the law based on considerations such as race. See Whren v. United States, 517 U.S. 806, 813 (1996). The Equal Protection Clause, rather than the Fourth or Fifth Amendment, provides the constitutional basis for objecting to intentionally discriminatory application of laws. Id. To support a claim of racially selective law enforcement, plaintiff must demonstrate that defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006); Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1168 (10th Cir. 2003) (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)). The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision. Marshall, 345 F.3d at 1168. Thus, to withstand a motion for summary judgment, a plaintiff in a Section 1983 suit alleging racial discrimination must present evidence from which a jury could reasonably infer that (1) defendants' actions had a discriminatory effect and (2) those actions were motivated by a discriminatory purpose. Defendants assert that Yilala has failed to establish either prong. The Court agrees.

"To establish discriminatory effect, a plaintiff making a race-based selective enforcement

---

[7](...continued)
have not shown any genuine issues of material fact whether defendants violated their rights, the Court does not address whether the law was clearly established.

claim must make a credible showing that a similarly-situated individual of another race could have been, but was not, investigated for the offense for which plaintiff was investigated." See Alcaraz-Arellano, 441 F.3d at 1264. Plaintiff can make this showing by offering statistical evidence. Although the record contains evidence that officers came to the business over 70 times during a six-year period, Yilala does not point to *any* evidence concerning treatment of similarly-situated business owners, and thus he can not show a discriminatory effect.

As to discriminatory purpose, Yilala points only to the fact that one of the officers referred to "boom boom" music. Without more, he has not set forth facts which support a finding that defendants' actions were racially motivated. Cf. McNeal v. Losee, 08-2472-CM, No. 2009 WL 1580274, at *6 (D. Kan. June 3, 2009). Defendants are therefore entitled to summary judgment on Yilala's equal protection claim.

B.   Ward's Claim

Ward asserts that Officers Hefley and Befort violated his rights to equal protection by issuing him a citation and filing an arrest report for violating the noise ordinance when they knew that Ward could not be held responsible for the music coming from the club.[8]

Defendants assert that they are entitled to summary judgment because Ward cannot establish that their actions had a discriminatory effect or were motivated by a discriminatory purpose.

Plaintiff has not come forward with evidence that the noise citation was racially motivated

---

[8] In his Motion To Sever (Doc. #64), Ward also mentioned a claim for malicious prosecution. The pretrial order, however, does not contain such a claim. The pretrial order determines the course of litigation, and the Court will not address such a claim at this late date. Even if it were to do so, for substantially the reasons set forth in Defendants' Reply (Doc. #76) at 10-11, the Court would find that Ward has not set forth record evidence to support such a claim.

or had a discriminatory effect. Absent admissible evidence on this issue, the Court must sustain defendants' motion for summary judgment on Ward's equal protection claim. See Marshall, 345 F.3d at 1168.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #67) filed November 8, 2013 be and hereby is **SUSTAINED**. The Clerk is directed to enter judgment in favor of defendants on all of plaintiffs' claims.

**IT IS FURTHER ORDERED** that Defendants' Motion To Strike Plaintiff Kevin Ward's "Response To Defendants' Notice And Court Order In Reference To D. Kan. Rule 56.1(f)" (Doc. #89) filed April 15, 2014 be and hereby is **OVERRULED**.

Dated this 5th day of May, 2014 at Kansas City, Kansas.

                                          s/Kathryn H. Vratil
                                          Kathryn H. Vratil
                                          United States District Judge